## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

)
IN RE APPLICATION OF P.W RENTALS LTD., )
1251237 ALBERTA LTD., 1218172 ALBERTA LTD. )
SILVER SKY RENTALS LTD., SHILO WILD, AND )     Case No. 24-MC-91609
PERRY WILD FOR AN ORDER TO TAKE DISCOVERY )
PURSUANT TO 28 U.S.C. § 1782 )
)
_____ )

## DECLARATION OF PAUL GREEP IN SUPPORT OF PETITION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Paul Greep, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.     I am a partner in the law firm Reynold Mirth Richards & Farmer LLP in Edmonton, Canada. I represent Petitioners P.W. Rentals Ltd., 1251237 Alberta Ltd., 1218172 Alberta Ltd., Silver Sky Rentals Ltd., Perry Wild, and Shilo Wild (collectively, "Petitioners") in connection with an ongoing civil action pending before the Court of King's Bench of Alberta, Canada (the "Alberta Action").

2.     A true and correct copy of the Statement of Claim filed by the Petitioners in the Alberta Action is attached as "Exhibit 1" hereto.

3.     Petitioners filed the Alberta Action on November 18, 2021, against Weaver Bros Auctions Ltd. ("Weaver"), doing business as Weaver Bros. Auction Service and as Weaver, following an online auction (the "Auction") that Weaver performed on behalf of Petitioners.

4.     Auction Mobility LLC ("Auction Mobility") is a limited liability company that is registered to do business in Massachusetts. Auction Mobility provides software for the administration of online auctions, including "bidding platforms," through which users can bid on auctioned items on a computer or smartphone. Weaver utilized Auction Mobility's auction management software in connection with the Auction referenced in paragraph 3 above.

5.  To the best of my knowledge, Auction Mobility is a Massachusetts-based company.

    a.  In the December 2020 contract between Auction Mobility and Weaver, Auction Mobility's President, Doug Brenhouse, signed for Auction Mobility and listed a Belmont, Massachusetts address.

    b.  Emails sent to Weaver by Auction Mobility employees, which were produced by Weaver in the Alberta Action, included signature blocs containing Massachusetts addresses, including a Boston, Massachusetts address for Auction Mobility's Chief Operating Officer.

    c.  The Auction Mobility Terms of Use applicable to the Auction, required to be accepted by all potential bidders intending to use the Auction Mobility Platform, provide 1) that the governing law of the agreement was that of the Commonwealth of Massachusetts, 2) that notices and related forms were to be mailed to Auction Mobility's "President" at an address located in Boston, Massachusetts, 3) disputes were required to be resolved by arbitration conducted in Boston, Massachusetts, 4) if the agreement to arbitrate were found not to be applicable, any dispute would be resolved exclusively by a state or federal court located in Boston, Massachusetts, 5) the bidder is required to agree to submit to the personal jurisdiction of the courts located in Boston, Massachusetts for the purposes of litigation, and finally 6) all other notices were to be mailed to Auction Mobility's "President" at an address in Boston, Massachusetts.

6.  The Alberta Action remains pending before the Court of King's Bench. Petitioners seek the discovery described in their Petition in support of the Alberta Action.

7.  Auction Mobility is not a party to the Alberta Action.

2

8.    The Court of King's Bench has not indicated that it would reject the discovery sought by the Petition.

9.    No Alberta procedural or evidentiary rule prohibits a discovery proceeding such as this.

Signed under the pains and penalties of perjury this $\mathcal{25}$ day of November 2024,

_____
Paul Greep

Greep Declaration_.docx

3

# EXHIBIT 1

| | |
|---|---|
| COURT FILE NUMBER | 2104 00674 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | GRANDE PRAIRIE |
| PLAINTIFFS | P.W. RENTALS LTD., 1251237 ALBERTA LTD., 1219172 ALBERTA LTD., SILVER SKY RENTALS LTD., SHILO WILD, AND PERRY WILD |
| DEFENDANTS | WEAVER BROS AUCTIONS LTD. operating under the tradenames of WEAVER BROS AUCTION SERVICE and WEAVER, JEFF WEAVER, GREG WEAVER, and WEAVER BROS AUCTION SERVICE, a partnership |
| DOCUMENT | **STATEMENT OF CLAIM** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Attention: Mikkel J. Arnston<br>Reynolds Mirth Richards & Farmer LLP<br>3200 Manulife Place<br>10180 - 101 Street<br>Edmonton, AB T5J 3W8<br>Telephone: (780) 425-9510<br>Fax: (780) 429-3044<br>File No: 116998-002-MJA/pdg |

Clerk's Stamp

JUDICIAL CENTRE OF GRANDE PRAIRIE

**FILED**
**Nov 18, 2021**
**by Email**

CLERK OF THE COURT

$250.00

**NOTICE TO DEFENDANT(S)**

You are being sued. You are a defendant.

Go to the end of this document to see what you can do and when you must do it.

**Note: State below only facts and not evidence (Rule 13.6)**

**Statement of facts relied on:**

1. The corporate Plaintiffs, P.W. Rentals Ltd., 1251237 Alberta Ltd., 1219172 Alberta Ltd., and Silver Sky Rentals Ltd. (collectively the "Corporate Plaintiffs"), are corporations incorporated in the Province of Alberta and pursuant to the laws of Alberta. At all material

times they carried on the business of renting equipment to various oilfield companies throughout northern British Columbia, Alberta, and Saskatchewan. The shareholders of the Corporate Plaintiffs are the Wilds, or their relatives.

2. The individual Plaintiffs, Shilo Wild and Perry Wild (collectively the "Wilds"), are residents in the Province of Alberta.

3. At all material times, Perry Wild and P.W. Rentals Ltd. acted as agents for all of the Plaintiffs.

4. The Defendant, Weaver Bros Auctions Ltd. operating under the tradenames of Weaver Bros Auction Service and Weaver is extra-provincially registered to carry on business in the Province of Alberta providing auctioning services.

5. The Defendant, the partnership known as Weaver Bros Auctions Service is a registered partnership in the Province of Alberta. Jeff Weaver and Greg Weaver are partners in Weaver Bros Auction Service

6. The Defendants are collectively referred to herein as "Weaver".

## CONTRACT AND DUTIES

7. In or around August of 2020 the Wilds approached two auction companies to handle the auctioning off all, or substantially all, of the Corporate Plaintiffs' assets and some of the Wilds' assets (the "Assets"). As part of the decision-making process, the Wilds were contacted by Joel Gillespie, a representative of Weaver, throughout the second half of 2020 and into 2021.

8. Of the two, Weaver was selected by the Plaintiffs on June 10, 2021 to conduct the auction of the Assets to be Auctioned, as defined below, (the "Auction").

9. Several discussions were had with Joel and other Weaver representatives regarding the scope, terms and conditions of the auction. These discussions included, but were not limited to:

   a. The Plaintiffs provided Weaver with a complete list of all of the assets of the Corporate Plaintiffs for the purpose of estimating the potential sales of the Auction. However, Weaver was expressly advised that some of the assets on the list were still being rented to the Corporate Plaintiffs' customers and would not make it back from the field in time to be auctioned. The guaranteed sale amount would need to be adjusted closer to the date of the Auction to reflect the specific Assets that would, in fact, be available to be auctioned This subset of the Assets is hereinafter referred to as the "Assets to be Auctioned". Weaver agreed and stated this was acceptable. It was never discussed that the Plaintiffs would have to pay commission on undelivered items.

   b. Some of the Assets to be Auctioned were smaller and had less value than the other Assets to be Auctioned (the "Small Lots"). It was agreed between the parties that, of the Small Lots, the rolling stock (i.e. assets with wheels) would be auctions for a

commission of 9% while the remainder of the Small Lots would be sold with commission of 12%.

   c. It was well known that a recent online Weaver auction had suffered from technical difficulties whereby potential bidders were prevented from bidding in the latter moments of the timed auction. In that case, Weaver paused the auction for a day to attempt to sort out the issues before recommencing the auction. Weaver advised P.W. Rentals Inc. that all such issues with the online auctions system had been resolved at great expense and there would not be any similar issues with the Auction.

(the "Representations")

10. Relying upon the Representations, P.W. Rentals Ltd. entered into a contract to auction the Assets to be Auctioned on behalf of all of the Plaintiffs with Weaver, dated June 11, 2021 (the "Contract"). Despite P.W. Rentals Ltd. being the signing party, the Individual Plaintiffs and a director from each of Corporate Plaintiffs signed the Contract. The Representations were continually discussed after the signing of the Contract without any concern or alternate position expressed by Weaver.

11. Even after the Representations were made and the Contract signed, the Parties continued to discuss the application of the Representations. Specifically, among other things, one unit ("193") was damaged in the field by a client of P.W. Rentals Ltd. and was no longer fit to be auctioned. The client agreed to pay P.W. Rentals Ltd. $125,000.00 for 193. P.W. Rentals Ltd. advised Weaver of the situation and, though Unit 193 was on the list of Assets, Weaver agreed that 193 would not form part of the Assets to be Auctioned. With respect to the other items that would not make the auction, when notified by the Plaintiffs, Weaver did not raise any concerns.

12. The terms of the Contract were, *inter alia*:

   a. The Owner instructed Weaver to sell, as agent of the Owner the items set out as per the List of Assets attached as Schedule "A" to the Contract, together with any additional items delivered to the site of the auction by the owner.

   b. The Consignment was completely and accurately described in the Schedule "A"

   c. The Owner understood that all of the consignment will be included in the Auction and sold to the highest bidder.

   d. Weaver guaranteed net sale proceeds of $8,200,010.00. This amount was a function of the total expected sales with a percentage discount.

   e. The commissioner rate was set at 9%.

13. The list of assets referred to in the Contract that formed the "Consignment" were never attached to the Contract to form a Schedule "A".

14. The Parties expressly, or impliedly, agreed that a sale by Auction required:

a. Weaver to register bidders that wished to participate in the Auction and were willing to agree to the terms and conditions of the Auction;

　b. Weaver would take all reasonable measures to ensure that any legitimate bid would be received;

　c. Weaver would take all reasonable measures to ensure that any bidders that complied with the terms and conditions of the Auction would be permitted to make bids during the Auction;

　d. Weaver would not unfairly or preferentially treat certain bidders over other;

　e. For timed auctions, Weaver would permit and take all reasonable steps to ensure that bids could be received until the time ran out;

　f. Weaver would delay, forestall, cancel or otherwise take all reasonable steps to mitigate against the failure of any of the above; and

　g. Such other requirements as are necessary to facilitate the sale of the Assets to any willing bidder for the highest bid thereby.

15. Weaver owed contractual and other duties of care to the Plaintiffs including but not limited to:

　a. rendering the best possible service to the Plaintiffs;

　b. rendering its services for reasonable fees and commissions;

　c. being solely responsible for the acts of its employees and agents in the conduct of the Auction;

　d. complying with the provisions of the *Consumer Protection Act* and its regulations;

　e. complying with the terms of the Contract, express or implied;

　f. not acting negligently, give any misrepresentations, or default with respect to the services rendered to the Plaintiffs;

　g. not doing or omitting something that would lead or contribute to the Plaintiffs' financial loss;

　h. abiding by the Code of Ethics as set out by the Auctioneer Association of Alberta, which includes but is not limited to adhering to a policy of honest dealing and conducting itself with propriety in all if its dealings with its clients.

　i. providing an internet system or an online program to conduct the timed Auction that was fit for service and could handle the Auction without incident;

　j. if there were to be any issues with the online Auction, taking steps to mitigate the losses the Plaintiffs losses including but not limited to restarting, pausing, or otherwise preventing the sale of the Assets to be Auctioned at less than optimum

value and ensuring that bidders had agreed beforehand that Weaver had the right to take such steps;

k.  taking all other steps necessary to ensure the maximization of the sales prices for the Assets to be Auctioned; and

l.  such other duties to be proven at trial

(the "Duties")

## THE FAILED AUCTION

16. As agreed, Weaver was expressly advised which of the Assets would not be making it to the Auction and thus would not form part of the Assets to be Auctioned. Weaver was well aware of which Assets were to be auctioned as they did not advertise all of the Assets, only the Assets to be Auctioned. At no time did Weaver advise the Plaintiffs that they would need to pay any fee or commission for such assets.

17. The Plaintiffs ultimately provided 140 lots to be auctioned with a collective estimated value at the time of $11,000,000.00.

18. The Plaintiffs arranged for the delivery of the Assets to be Auctioned to the Weaver auction site in Rycroft, Alberta. The timed bidding process began September 24, 2021 with the bidding closing in a staggered fashion over September 28, 29, and 30, 2021.

19. Upon the lots nearing the end of their timed auctions, bidders began to be precluded from bidding on items due to what appeared to be technical difficulties. The Plaintiffs received numerous communications from interested bidders stating that they desired and intended to bid on lots but were prevented from doing so right at the end of the timed Auction. Others communicated that they could not access the online platform to make bids throughout the September 27-29, 2021 dates of the Auction. Bidders and potential bidders communicated to the Plaintiffs that they were unable to make bids or further bid on Assets to be Auctioned that they would have bid greater values on than what the Assets to be Auctioned ended up selling for. Perry, other representatives of the Plaintiff corporations, along with numerous bidders, contacted Weaver during the course of the Auction to express similar concerns.

20. Weaver refused to stop the Auction regardless of the technical difficulties that were occurring and the reductions in the ultimate sale prices this caused.

21. Due to these potential bidders being prevented from bidding, the vast majority of the lots sold at under value and for far less than they would have had the timed auction proceeded as promised by Weaver or as a reasonable person would expect an auction to be conducted.

22. The gross sales of the Auction, less the Small Lots, was $9,151,360.00. Not only did this underperform the estimated pre-auction value, but indications were that the Auction, if properly executed by Weaver, would have significantly over performed the initial $11,000,000.00 estimate.

23. After the Auction, Weaver admitted there were issues with the auction but, since the guaranteed minimum amount was reached, there was nothing to be done.

24. Further, notwithstanding, the continued discussions had between the Perry and Weaver regarding the fact that not all of the Assets listed on the original asset lists would be auctioned, Weaver charged commission on $625,000.00 of assets that it did not sell thus overcharging in the amount of $56,250.00.

25. Weaver refused to accept that the Plaintiffs suffered losses due to the manner in which it conducted the auction or the services it provided. Weaver paid the Plaintiffs the amounts it felt were the correct amounts after deductions for commissions.

26. Despite Weaver having agreed that the Small Lots would attract a commission rate of 9% for rolling stock and 12% for the remaining items, Weaver overcharged the Plaintiffs when deducting its commission. Such amounts are approximately $2933.75.

27. Weaver breached its Duties by:

   a. Failing in rendering the best possible service to the Plaintiffs;

   b. Failing to render its services for reasonable fees and commissions, including but not limited to

      i. Charging fees or commissions for items not sold after Weaver agreed that such items need to make the Auction;

      ii. Charging excessive commission on the Small Lot sales after it was agreed otherwise;

      iii. Such other unreasonable charging of fees and commissions to be proven at trial;

   c. Failing to take responsibility for the acts of its employees and agents in the entering into of the Contract and the conduct of the Auction including but not limited to failing to adhere to the Representations and warranties agreed to by Joel and other representatives of Weaver;

   d. Failing to comply with the provisions of the *Consumer Protection Act* and its regulations as set out herein;

   e. Failing to comply with the terms of the Contract, express or implied, including but not limited to failing to execute a properly functioning auction capable of maximizing the sale proceeds of the Asset to be Auctions and the Small Lots;

   f. Acting negligently in its giving the Representation, its handling of the Auction and its lack of effort to mitigate the damages to the Plaintiffs stemming from the Auction, and its clear default with respect to the services rendered to the Plaintiffs;

   g. Failing to perform the Auction in a competent and professional manner and taking steps to pause the Auction when issues arose, and omitting to follow through with the Representations thus causing the Plaintiffs' financial loss;

h. Failing to abide by the Code of Ethics as set out by the Auctioneer Association of Alberta, by failing to undergo honest dealings as it pertains to its abiding by the Representations and by failing to conduct itself with propriety in all if its dealings with its clients.

i. Failing to provide an internet system or an online program to conduct the timed Auction that was fit for service and could handle the Auction without incident as was represented to the Plaintiffs;

j. Failing to take steps to mitigate the losses of the Plaintiffs including but not limited to failing to restart, pause, or otherwise prevent the sale of the Assets to be Auctioned at less than optimum value and failing to ensure that bidders had agreed beforehand that Weaver had the right to take such steps;

k. Failing to take all other steps necessary to ensure the maximization of the sales prices for the Assets to be Auctioned;

l. Failing to sell the Assets to be Auctioned by means of an auction in a manner agreed upon between the Parties or as that method of sale would be understood by a reasonable, informed person; and

m. such other breaches to be proven at trial

(the "Breaches")

28. The charging of commissions or fees on items that Weaver understood and agreed were not to form part of the Assets to be Auction constitutes a penalty and not a pre-estimate of damages.

29. Due to the Breaches, it is estimated that the Assets to be Auctioned sold for 30% less than what they would have sold for had the Auction proceeded as promised, or as a reasonable person would expect an auction to be conducted, resulting in a loss to the Plaintiffs, collectively, in the amount of $2,745,408.00.

30. Due to the Breaches, Weaver improperly collected and converted $59,183.75 in excessive commissions.

31. The Plaintiff proposes that the trial of this action be held at the Law Courts, in the City of Edmonton, in the Province of Alberta. In the Plaintiff's opinion, this action will not likely take more than twenty-five (25) days to try.

**Remedy sought:**

32. Judgment in the amount of $2,804,591.75 against the Defendants, Weaver Bros Auctions Ltd. operating under the tradenames of Weaver Bros Auction Service and Weaver, Jeff Weaver, Greg Weaver, and Weaver Bros Auction Service, a partnership, jointly and severally, or such other higher amount as may be proven at trial

33. Costs on a solicitor and own client basis; and

34. Such other relief as this Honourable Court may see fit to grant.

**NOTICE TO THE DEFENDANT(S)**

You only have a short time to do something to defend yourself against this claim:

20 days if you are served in Alberta

1 month if you are served outside Alberta but in Canada

2 months if you are served outside Canada.

You can respond by filing a statement of defence or a demand for notice in the office of the clerk of the Court of Queen's Bench at Grande Prairie, Alberta, AND serving your statement of defence or a demand for notice on the plaintiff's(s') address for service.

**WARNING**

If you do not file and serve a statement of defence or a demand for notice within your time period, you risk losing the law suit automatically. If you do not file, or do not serve, or are late in doing either of these things, a court may give a judgment to the plaintiff(s) against you.